## DORRANCE v. MICHIGAN UNITED RAILWAYS CO.

1. CARRIERS—STREET RAILWAYS—ICE AND SNOW—EVIDENCE.

Where defendant claimed, in an action for personal injuries, that plaintiff, a passenger on its street car, fell because of the sudden application of the brakes, and plaintiff claimed that she fell because of accumulated snow and ice in the vestibule of the car, upon testimony showing that the weather was snowy and melted snow accumulated in the vestibule of the car, that she did not fall forward

but slipped down feet foremost, and on plaintiff's testi-
mony supporting her contention, the question was for the
jury.

2. NEW TRIAL—MOTIONS—NEGLIGENCE.
   Evidence as to the cause of plaintiff's fall being in conflict,
   and the weight thereof being for the jury, it was proper
   to deny a motion for a new trial.

3. CARRIERS—NEGLIGENCE—DUE CARE.
   Whether the employees in charge of defendant's car had a
   reasonable opportunity to remedy the accumulation of
   snow in the vestibule of the car when it reached the end
   of the line and the trolley was changed before the trip
   on which plaintiff was hurt, was a question of fact.[1]

4. SAME—EVIDENCE.
   Unsupported by any testimony that the condition of the car
   on a subsequent trip remained the same as when plaintiff
   slipped on the accumulated snow, evidence relative to the
   condition at the later time was incompetent and preju-
   dicial when admitted for other purposes than to show the
   climatic condition.

Error to Kalamazoo; Knappen, J.   Submitted Janu-
ary 14, 1913.   (Docket No. 105.)   Decided May 28,
1913.

Case by Marie C. Dorrance against the Michigan
United Railways Company for personal injuries.
Judgment for plaintiff.   Defendant brings error.
Reversed.

*Sanford W. Ladd,* for appellant.

*Edward J. Anderson,* for appellee.

KUHN, J.   This is an action brought for damages
arising from personal injuries occasioned, as claimed
by the plaintiff, by slipping on an accumulation of
ice in the vestibule of one of defendant's cars.

The route upon which this car was running in the

[1]On the question of the duty of a carrier of passengers to keep
steps of cars free from snow and ice, see note in 35 L. R. A.
(N. S.) 592.

city of Kalamazoo was known as the Washington and West street car line. The car started at the Michigan Buggy Works on Reed street and ended at the top of the West street hill, and the running time from one end of the route to the other was about 25 minutes. The cars operated on this route are known as pay-as-you-enter, double-end, double-truck cars, with closed vestibules at both ends; the conductor and motorman changing ends when arriving at the end of the line. The passengers entered the rear platform on the right-hand side and would leave the car from the front platform on the same side. The car in question left the car barns at 6:05 a. m. on the 7th day of January, 1911, the day of the accident, and was starting on its second round trip when plaintiff boarded the car at 7 o'clock a. m. at the corner of James street and Washington avenue. There is no dispute that when the car reached Rose street Mrs. Dorrance attempted to leave the car at the front door and fell in the front vestibule; and the matters in controversy are how the accident happened and the extent of plaintiff's injuries. It is also undisputed that there was snow on the ground on the day of the accident.

The defendant, by assignments of error, raises the question that a verdict should have been directed for the defendant for the reason that before the plaintiff could recover it was incumbent upon her to show that there was ice in the vestibule which was apparently dangerous, that it must have remained there for an unreasonable length of time, and that defendant's employees must have had an opportunity to remove the accumulation, if there was any, before the time of the accident.

The plaintiff testified that as she was about to leave the body of the car and stepped into the vestibule she noticed a little lump of ice, but did not see it in time to avoid stepping on it; that she fell on her back; and

that her head struck upon the irons on which the doors slide. It was the theory of the defendant that the accident occurred because of the sudden application of the air brakes, which caused the plaintiff to fall, and it is claimed that the testimony of the plaintiff is not corroborated sufficiently to warrant the circuit judge in allowing the verdict to stand, because it is claimed that it is clearly against the weight of the evidence.

Henry Kremer, who was a passenger on the car, was a witness offered by the defendant, and testified as follows:

"I noticed a lady while the car was on its way from Burdick to Rose street. I noticed that she got up before the car stopped.

"*Q.* What did she do?

"*A.* She walked to the front door, or nearly to it, and stood there, and the car was coming to a stop; her feet seemed to go from under her, and she fell in the front vestibule.

"*Q.* Did you notice anything about the air going on?

"*A.* No more than usual. * * *

"*Q.* You didn't notice any jerking, jerking her off her feet?

"*A.* No, sir; I didn't see her step down into the vestibule. I can't tell how she fell. I saw her strike against the step. I couldn't say where she struck. She fell hard.

"*Q.* Did her feet slip out from under her when she fell?

"*A.* They seemed to, to my knowledge; yes, sir.

"*Q.* She didn't sit down on her feet, then?

"*A.* I don't think so; no, sir. I couldn't see her after she had fallen.

"*Q.* How flat was she on the vestibule floor when you first saw her down?

"*A.* Her feet seemed to be nearly to the motorman. The motorman took hold of her and helped her up by the arm.

"*Q.* Well, she didn't step down, stand there behind the motorman before she fell, did she?

"*A.* No, sir."

F. M. Meredith, another witness for the defendant, testified as follows:

"*A.* There was a lady on the car, and when it got about halfway between the two blocks she got up and walked into the front vestibule and stood right behind the motorman, and when they got up to Rose street they put on the air, and as the car stopped she fell down right back of him in the vestibule, went over backwards, down in kind of a heap right back of him."

The motorman, Ernest Middleton, testified as follows:

"I stopped the car for Mrs. Dorrance to alight at Rose street. I didn't notice her until she got on the platform. I opened the vestibule exit door for her. I didn't open the door going out of the car where the seats are into the vestibule.

"*Q.* She is supposed to open that herself?

"*A.* That door is always open.

"*Q.* How far down did she have to step to get into the vestibule?

"*A.* It is about a nine-inch drop, I think; I am not positive. I opened the exit door.

"*Q.* Did you notice any trouble there that morning when she was going from the car where the seats are down into the vestibule?

"*A.* In what way do you mean? I noticed she fell on that platform. Why, as she stepped down on the platform, she fell, fell down on the platform. I was not watching her. I was turned around to open the door like this, and my head was turned, I should say, when she started to fall.

"*Q.* Did she fall with any force?

"*A.* She fell about as heavy as any one could fall that distance; I don't know what you call force. She struck on the platform, her bottom I should judge. I do not think her back and shoulders and head and neck struck any part. I am not positive. * * * The first thing that attracted my attention was that she fell on the platform. At that time I was facing west, the front of the car. As the motorman reaches over to open the exit door he has to turn slightly. When I reached to open the door, I naturally looked over my shoulder, so I knew that some one was there. When

we stop the car I naturally would look around to see if any one is going to get out or not.  As I reached over to open the door I saw her step on the platform of the vestibule, and I saw her start to fall; of course, when she started to fall I stepped around naturally to help her.  I had opened the door before.  When I stepped around to help her, she was facing directly west, the front end of the car.  Her legs were straight out on the platform.  I assisted her to rise.  I asked her if she was hurt, and she said she didn't think she was.  I asked her for her name; she didn't give me any name.  She started away."

We think there is sufficient in this testimony to corroborate the theory of the plaintiff that her fall was caused by her feet slipping out from under her.  Several witnesses testified that she fell backwards and that her limbs projected out into the vestibule.  The jury were warranted in accepting this theory of the case rather than the one that the fall was caused by the sudden stopping of the car, which, under ordinary circumstances, and it could reasonably be claimed, would have resulted in her being thrown forward.

The question of the weight of the evidence is clearly one for the jury.  *Curry* v. *Traver-Bird Co.,* 167 Mich. 17 (132 N. W. 463) ; *Johnson* v. *Railway Co.,* 162 Mich. 301 (127 N. W. 271) ; *Tietz* v. *Railway Co.,* 166 Mich. 205 (131 N. W. 710).  As was said by this court in the case of *Galloway* v. *Railway,* 168 Mich. 343, 346 (134 N. W. 10, 11) :

"To entitle the defendant to a directed verdict, there must have been no evidence tending to show its culpability in the premises."

As the evidence in this case was clearly conflicting, we think that the trial court properly denied the motion for a new trial on the ground that the verdict was against the weight of the evidence.  See *Grimme* v. *Fraternal Aid Ass'n,* 167 Mich. 240 (132 N. W. 497).

The trial judge charged the jury upon the liability of the defendant as follows:

"If you find from the evidence in this case that in operating this car snow had been tracked into its vestibule and become hard and packed and two or three inches high in the vestibule just in front of this door, as claimed by plaintiff, and that such snow had been tracked in there and formed, as claimed by her, and that it was the duty of the defendant, in operating this car in which this plaintiff claims she took passage, to sand or chip off the hard snow which had been tracked into the vestibule, if it had been, when en route the other way, and that on this morning before the plaintiff entered this car other persons had tracked into this vestibule, when said car was going the other way, snow which had fallen the night previous, or at some other time, and that it had been packed and was hard and formed a rise at the foot of the step from the car proper so that it was not reasonably safe for passengers in leaving this car to pass over, and that the defendant carelessly, recklessly, and negligently failed to observe its duties in that behalf and allowed this snow to remain in this vestibule in this condition, if it were so tracked in there, and that these employees had at the Washington avenue end of its run, just before plaintiff took passage, a reasonable opportunity and time in which to chip off or sand the same, and that it was not snowing that morning and had not been since said car first commenced to run, as plaintiff claims, and upon leaving this car that morning while using due care and diligence she stepped down upon this ice, and that she did not see it until she was stepping down and could not refrain, and in stepping upon it she slipped and fell from which she received injuries to her person, then I charge you she would be entitled to recover from the defendant whatever lawful damages she has proven, if any, were sustained by her."

It is contended that, even if ice had accumulated in the front vestibule of the car, no reasonable opportunity had been afforded the defendant to remove it before the time of the accident. On the first round trip this front vestibule was used as a rear vestibule, and, under the theory of the plaintiff, the snow and ice was carried into the front vestibule while the car

was making the return trip of its first round trip. It, however, proceeded to the end of the line, and there, according to the testimony, the only thing that was done was to turn the trolley pole. At this point, when this change was being made and the motorman and conductor changed places, the car being stationary at the end of the route, we think it can properly be claimed that a reasonable opportunity was afforded the defendant to remove any accumulations of ice or snow in the vestibule, and that it was its duty to do this before starting out on another trip. This question was properly submitted to the jury by the trial court. See *Foster* v. *Railway Co.*, 182 Mass. 378 (65 N. E. 795).

While it has been repeatedly held that it would be impracticable and beyond the duty which the railroad company owes its passengers to require it to immediately and continuously remove snow and ice from trains or cover them with sand or ashes in such manner that no slippery places shall at any time be exposed, nevertheless, as was said in *Neslie* v. *Railway Co.*, 113 Pa. 300, 304 (6 Atl. 72, 73) :

"It may be impossible in the winter to prevent deposits on the step by falling snow, or from the feet of persons entering the car, and which in either case may result in the formation of ice. The main question in regard to this is whether it remained there for such time and in such form as to establish the negligence of the defendant, and that this negligence contributed to the injury of the plaintiff."

See, also, *Riley* v. *Rhode Island Co.*, 29 R. I. 143 (69 Atl. 338, 15 L. R. A. [N. S.] 523), and cases cited in note, 17 Am. & Eng. Ann. Cas. 50.

On the trial of the cause the husband of the plaintiff was offered as a witness, and testified as follows:

"I followed her down town that morning.
"*Q.* On what car? (Objected to as incompetent and immaterial. Exception.)

"*A.* I followed, I believe, with the same crew.

"*Q.* You may state whether or not there was any. snow on the ground?

"*A.* Yes, sir.

"*Q.* Where did you enter that car; from what end? (Objected to as incompetent and immaterial and prejudicial to the defendant in this case, and subsequent to the time of this accident. Overruled; exception.)

"*A.* At the rear end.

"*Q.* To what place did you go?

"*The Court:* Go ahead. (Exception for defendant.)

"*A.* To the corner of Portage and Main streets.

"*Q.* At what end of the car did you leave?

"*A.* At the front end.

"*Q.* You may state what the condition of the floor of the car was when you left it? (Objected to as incompetent.)

"*The Court:* I have already ruled on that, and I shall adhere to the same ruling.

"*Mr. Mills:* I understood when counsel undertook to state it to the jury the court did not pass upon it.

"*The Court:* When one witness was on the stand I allowed him to testify to the condition of the car on the subsequent trip. (Exception for defendant.)

"*A.* It was in an uneven condition, the front end of the car, frozen snow; looked like as though it was tracked in and frozen up, humped up like, uneven.

"*Mr. Mills:* I move that go out as irrelevant and incompetent. (Overruled; exception.)

"*Mr. Mills:* There is nothing to show that the car was in the same condition as it was at the time of the accident.

"*The Court:* That is a question for the jury.

"I didn't see Mrs. Dorrance that day after I got off the car until probably 12:30; 12:30 at the Michigan Central Depot.

"*Mr. Anderson:* In offering the testimony of this witness in regard to the condition of the vestibule of that car, I intended to get upon the record the purpose for which we offered it; but I forgot it.

"*The Court:* You may, if you wish to.

"*Mr. Mills:* The court ruled it in, I supposed.

"*The Court:* I think that is so. I ruled in your favor and allowed it to go in, as Judge Mills says. I think on the argument to the jury you can state for what purpose you wish it in.

"*Mr. Ladd:* Suppose we make a motion to strike out all the testimony in reference to the condition of the car as testified to by Mr. Dorrance, for the reason that it is incompetent and immaterial, in view of the fact that it was subsequent to the time of the accident, and there is no proof that the car was in the same condition.

"*The Court:* That will be denied by the court with an exception.

"*Q.* In which vestibule of the car was this hard snow?

"*A.* It might have been in both. I noticed it when I was leaving the car.

"*Q.* Where was it with reference to the inner door; to the front end of the car?

"*A.* Directly in front as you enter the vestibule from the car."

It is contended by counsel for the defendant that it was error to allow Mr. Dorrance to testify as to the condition of the vestibule without its having been shown that the condition then was the same as it was when the plaintiff fell. The rule as to showing the condition of a place subsequent to the time in question is stated in 11 Enc. of Ev. p. 820, as follows:

"Again, upon the question of the probable condition of a thing or place at a particular time, evidence of its condition both prior and subsequent to the time in question is admissible where it is shown that there has been no change in the meantime, as where it appears that the condition is a permanent one in its nature and not subject to change, or that it is of such a nature as to warrant the inference that no change has taken place."

To make the testimony competent it must at least raise an inference that the condition at the time the vestibule was seen by the witness was the same as when the accident occurred. The cases cited in sup-

port of plaintiff's contention are all cases where such an inference could be drawn. It does seem, however, that in the instant case, considering the character of the substance alleged to have caused the injury, the fact that it changes in form so readily, the fact that in the vestibule the snow was melting, that passengers had entered and left the car through the vestibule during the interim, that snow had undoubtedly been tracked into the vestibule, as it is admitted that snow was on the ground—if any inference is to be drawn, it would be that the conditions were not the same when the witness observed them as when the accident occurred. Under these conditions and the complete absence of any positive showing that the conditions were the same, and no such inference being deducible, we think it was improper to allow the witness to testify as to the condition of the vestibule as he found it. Counsel claim that an attempt was made to limit the purpose for which the testimony was offered to show the climatic conditions on the day of the accident. At the time the jury was being charged the following occurred:

"*Mr. Anderson:* I would like to have the jury instructed, in substance, that the only thing they can consider the testimony of Fred Dorrance, in regard to snow being on the front vestibule when he was on the car, is for the purpose of determining the climatic conditions that morning and for determining whether or not snow could have been tracked into that vestibule on the first return of the car back before Mrs. Dorrance boarded the car. That is all we claim for it.

"*The Court:* If that is all you claim for it, the jury have heard what you claim. The testimony is before the jury for all purposes.

"*Mr. Mills:* The jury can consider it for all other purposes.

"*The Court:* Yes.

"*Mr. Anderson:* If they want to.

"*The Court:* They should consider his testimony the same as any other witness in the case. That is all

you claim for his testimony.   I understand you to say that you don't claim anything for his testimony on the question of snow and ice there, except to show the condition of the car on that morning and the climatic conditions surrounding it.

"*Mr. Anderson:* The condition of the car when it made—not to show the condition of the car, but to show that snow could have been tracked into that car.

"*The Court:* That is a matter of argument.   I do not think I will give any charge upon that."

From the foregoing it appears that, although counsel for plaintiff attempted to limit the purpose to the showing of climatic conditions, the court admitted it for all purposes and especially to show the condition of the car.   We are satisfied that it was proper to admit the testimony to show climatic conditions, to show that snow was tracked that morning and that it was congealing.   It was improper, however, to admit it to show the condition of the car at the time of the accident, and this was prejudicial error.

It is unnecessary, in view of the foregoing, to review the other assignments of error.

The judgment is reversed, and a new trial granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.